FILED

2013 APR -5 PM 2: 37

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

ROBERT CHARLES JUSTIN PORTER AND EVA ANDREA PORTER, On Behalf Of Themselves And All Others Similarly Situated,

Plaintiffs,

vs.

CHRYSLER GROUP LLC.

Defendant.

CASE NO. 6:13-cv-555-ORL-19-GJK

**COMPLAINT**

**CLASS ACTION**

**DEMAND FOR JURY TRIAL**

## NATURE OF THE ACTION

1.  Plaintiffs Robert Charles Justin Porter ("Porter") and Eva Andrea Porter (collectively "Plaintiffs"), residents of Florida, hereby bring this action against Defendant Chrysler Group LLC on behalf of themselves and all other similarly situated owners within the United States and/or Florida of Defendant Chrysler Group LLC's ("Chrysler") model year 2010-2013 RAM trucks equipped with the 5.7 L Hemi 8-cylinder engine (hereinafter "the subject vehicles"). As detailed below, the engines of the subject vehicles are equipped with a Multi-Displacement System ("MDS") whose function is to deactivate four of the engines' eight cylinders when the vehicles' throttles are closed, or at steady speed. In this fashion, the 8 cylinder engine is to attain superior fuel efficiency. Unfortunately, unbeknownst to Plaintiffs and other purchasers of the subject vehicles, Chrysler's MDS was defectively designed and manufactured, such that the MDS system causes the vehicle engine to operate as though the vehicle had shifted into too high a gear, causing the vehicle to lose power when the MDS engages, experience

engine revving without accompanying acceleration, and to exhibit extreme vibration. Chrysler has acknowledged this problem in writing in correspondence it submitted to the Better Business Bureau responsive to Mr. Porter's complaints, but in that same writing Chrysler admitted that it does not yet have a solution to this problem and defect, but rather has "forwarded [it] to engineering and they are currently investigating this problem and *developing a repair to fix it*." Ex. 1 hereto (emphasis added). The subject vehicles are covered by Chrysler's 5 Year/100,000 mile Powertrain Limited Warranty, attached hereto as Exhibit 2, on whose terms Plaintiffs reasonably relied when purchasing their truck. Because Chrysler has been unable to and has not fixed this defect, it has breached its own express warranty. Further, because, as admitted in Chrysler's own correspondence to the Better Business Bureau, it has yet to devise a fix to repair or remedy this defect, as it is required to do under the terms of its express warranty, Chrysler has violated the Federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301. *et. seq.*

## PARTIES

2. Plaintiffs are residents of Florida and the original owners of a 2012 Dodge Ram 1500 Truck manufactured and distributed by Defendant. Plaintiffs' truck was purchased from Gator Chrysler, Inc., a Chrysler factory-authorized dealer in Melbourne, Florida, on June 2012, and is equipped with Chrysler's 5.7 L Hemi 8-cylinder engine. This engine is outfitted with Chrysler's MDS. As detailed herein, Mr. Porter repeatedly took his vehicle to two separate Chrysler factory-authorized dealerships for repairs to the malfunctioning MDS in his vehicle, but despite his repeated complaints, these dealerships were unable to and did not repair the problem. When the matter was escalated to Chrysler's corporate office, Chrysler, rather than repairing the problem, indicated merely that "[t]he problem has been forwarded to engineering and they are currently investigating

this problem and *developing a repair to fix it.*" Ex. 1 (emphasis added). Despite this, the Porters' truck has not been fixed, and the problems to the vehicle's MDS persist, despite the fact that Mr. Porter first complained of the problem to a Chrysler factory-authorized dealership on July 3, 2012 (see Exhibit 3 hereto), and has continued to do so. In fact, Mr. Porter's complaint was verified as early as September 17, 2012, by mechanics at Boniface-Hiers Chrysler Dodge Jeep, another Chrysler factory-authorized dealership located in Merritt Island, Florida, who test drove the Porters' truck and confirmed the nature of the problem. *See* Exhibit 4 hereto. Ever since then, on at least four separate repair records, that Chrysler dealership has noted that the Porters' "Warranty Claim Repairs Remain Open" (see Exhibits 4-7 hereto) because Chrysler has yet to provide the dealership with a fix or repair procedure to remedy this defect.

3. Defendant Chrysler Group LLC is a limited liability company organized under the laws of the State of Michigan and having its principal place of business at 1000 Chrysler Drive in Auburn Hills, Michigan. Formed in 2009, upon the emergence from bankruptcy of Chrysler LLC, Defendant Chrysler Group LLC was formed to establish a global strategic alliance with Fiat S.p.A., and currently produces Chrysler, Jeep, Dodge, Ram, Mopar, SRT and Fiat vehicles and products. As the maker and United States distributor for Ram trucks, Defendant Chrysler Group LLC was the entity responsible for injecting Plaintiffs' vehicle and the subject vehicles into the United States stream of commerce.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over all counts of this Class Action Complaint pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the claims involve a class of members whose citizenship (Florida or nationwide) is diverse from Defendant's citizenship (Michigan), and the amount

in controversy exceeds $5 million exclusive of costs and prejudgment interest.

5. To the extent that subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d) were to be found lacking over any claim in this Class Action Complaint, this Court would and still does have supplemental subject-matter jurisdiction over such a claim pursuant to 28 U.S.C. §1367 because that claim originates from the same common nucleus of operative facts and law as the remaining claims over which this Court has original subject-matter jurisdiction.

6. This Court has personal jurisdiction over Defendant pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and Fla. Stat. §§ 48.193(1)(a) & 48.193(2) because Defendant has operated, conducted, engaged in, or carried on a business or business venture in Florida and/or had an office or agency in Florida. Defendant's activities in Florida include its sales, advertising, marketing, distribution, and warranty activities it performs with respect to Chrysler branded vehicles.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiffs purchased their vehicle within this judicial district, experienced the problems to the vehicle's MDS within this judicial district, and sustained their legal injury within this judicial district by paying for a defective truck. Further, the majority of the witnesses with whom Plaintiffs interacted in connection with their attempt to get the defect plaguing their truck repaired are employees of Chrysler factory-authorized dealerships who are also located within this judicial district.

## THE RAM TRUCKS, THEIR 5.7 L HEMI ENGINE AND MDS SYSTEM, AND THE DEFECT THERETO

8. Chrysler's "Ram" brand represents one of the nation's most popular line of trucks. For model years 2010-2013, the Ram 1500 and Ram 2500 trucks were powered by Chrysler's 5.7 L Hemi Engine as one possible powerplant.

9. Chrysler's 5.7 L Hemi engine for the 2010-2013 model year Ram trucks is outfitted with the MDS.

10. Chrysler's 5.7 L Hemi engine is an 8-cylinder motor. The MDS in the engine is designed to deactivate 4 of the engine's 8 cylinders when the vehicle's throttle is closed, or at steady speeds. The purpose in doing so is to enhance fuel efficiency (as the operation of 4 cylinders requires less fuel consumption than the operation of 8 cylinders), without significantly adversely impacting vehicle performance because activation of the MDS is to occur at such times when deactivation of the 4 cylinders is least likely to be felt by the vehicle's driver (i.e., when the throttle is closed or the vehicle is moving at a steady speed).

11. In fact, however, rather than performing as it should, Chrysler's MDS operates defectively. When it engages, rather than doing so seamlessly or near seamlessly, the MDS engagement causes the vehicle to act as though it was improperly shifted into too high a gear. As experienced by Plaintiffs in their Ram 1500 truck, upon MDS engagement, the vehicle experiences extreme noise and vibration, as the engine appears to rev, without a corresponding power or acceleration response.

12. Plaintiffs' complaints and experiences in this regard are not anomalous. Instead, countless owners of Ram trucks outfitted with this same MDS-equipped engine have experienced the same problems, and voiced their concerns on various online fora. For example, so prevalent are the MDS-related complaints about the Ram trucks that a website has been set up by aggrieved vehicle owners to voice their own experiences with this defective system. The website is entitled "Dodge Ram Hell," and is viewable at www.dodgeramhell.com.

13. Attached as Exhibit 8 hereto are merely but a few of the postings made on the "Dodge Ram Hell" website by aggrieved Ram truck owners. For example, owner "Preston W." posted this complaint:

5

> *Same issue, when dropping cylinders I get a vibration from hell! No fix Dodge says some its worse than others but is normal.. i have a 2012 but my 2009 same truck different year didnt do it at all.. was seamless transition from 8 cylinders to 4... Very pissed off and unsatisfied as there seems to be no one that has a fix!!!!*

Ex. 8.

14. So too, poster "MikeB" also writes:

> *I too get the vibrating effect that MDS causes when traveling at speeds around 45mph. That is a pin point description of what it feels like, as if you are in too high of a gear for the speed you are traveling. The only cure is to get on the gas to get the transmission to downshift. MDS has to be one of the most gimmicky systems ever installed in a mass produced vehicle in automotive history*

Id.

15. Similarly, a poster using the online screen name "guppy420," detailed that:

> **Still there in 2012!!!!**. *I just assumed they wuld* [sic] *have worked out the issues. Guess what - not! At 8200 miles my MDS vibration worsened significantly!*

Id.

16. Yet another Ram truck owner using the screen name "cools," similarly explained that:

> *Thank you ! I agree. It didnt say in my brochure that between 30-45 mph your trucks will vibrates*[sic] *and run like crap cause of our mds engine. This is unacceptable and false advertising. You cant just say its normal if its not in the*

6

*brochure or manual.*

*Id.*

17. In the same vein, a Ram truck owner with the screen name dskRAM4 also posted that:

> *MDS is painful, IMO - it plain old sucks. I have mine disabled with the SC tuner. On trips to dealer when flashed back to stock, knocking in 5th gear also works great. Have been averaging 1.5 MPG difference on highway driving with it disabled. Well worth it to me. The truck just plain old performs 100% better without MDS mode. MDS mode is like buying a vehicle with a 6 speed manual trans and driving 20 mph in 6th gear. Definitely* [sic] *a bad programming design on it's* [sic] *implementation.*

*Id.*

18. The foregoing are but a small sampling of virtually identical complaints voiced by Ram truck owners nationwide in public fora. Even a cursory online search for the issue reveals hundreds or more of such complaints.

## **PLAINTIFFS' DEFECTIVE TRUCK AND CHRYSLER'S INABILITY TO FIX THE PROBLEM**

19. Plaintiffs' experience with the Ram truck's MDS regrettably was no different than that encountered by those owners posting on the various automotive-related websites.

20. Plaintiffs began experiencing the MDS-related extreme vibration and noise almost immediately following their purchase of the truck. On August 7, 2012, less than two months following Plaintiffs' purchase and when the truck had logged less than 1,000 miles, Mr. Porter took it into Gator Dodge complaining that, *inter alia*, "transmission feels like it is slipping and take like a block to shift gears

if U hit hard it whins [sic] up then shift." Ex. 9, at 1. The Gator Dodge dealership was reportedly unable to replicate the problem experienced by Plaintiffs, but claimed to have fixed the issue nevertheless by "flashing" or updating the Power Control Module ("PCM"). *Id.*

21. This was no fix. Less than three weeks later, Mr. Porter returned with the truck to Gator Dodge. As documented in Gator Dodge's Service Record, "[c]ustomer states that while driving the [sic] at about 45 mph the transmission went into neutral and the RPMs when up the indicator still said Drive. Had to pull over put in Neutral then drive. Ex. 10, at 1. The Gator Dodge dealership again claimed that it "could not duplicate" the problem. *Id.*

22. Dissatisfied with the service he received at Gator Dodge, Mr. Porter contacted Chrysler's corporate office, which advised him to bring his vehicle to another Chrysler factory-authorized dealership.

23. Mr. Porter did so, and on September 17, 2012 when his truck had logged only 2,324 miles, Mr. Porter brought the truck to Boniface-Hiers Chrysler Dodge Jeep, another Chrysler factory-authorized dealership in Merritt Island, Florida. This time, when Mr. Porter complained that "there is a droan [sic] 35-45 mph constant speed after acceleration then cruising," (Ex. 4, at 1), this dealership was able to replicate the issue, noting that "test drove-verified customer's concern-elevated to Engineering Department-will contact customer with repair procedure." *Id.* As a result, because the dealership was awaiting the "repair procedure" to be provided by Chrysler's "Engineering Department," the service record was annotated to reference that "Warranty Claim Repairs Remain Open." *Id.*

24. But, in fact, no such "repair procedure" was ever provided by Chrysler or made by Boniface-Hiers Chrysler Dodge Jeep. Instead, as documented in three more service records from Boniface-Hiers Chrysler Dodge Jeep, dated October 11, 2012, December 19, 2012, and February 18, 2013, in each of these instances, the

8

dealership continued to report that Mr. Porter's "Warranty Claim Repairs Remain Open." Exhs. 5 -7.

25. Fed up and dissatisfied with Chrysler's lack of response, Mr. Porter, who was also contacting Chrysler by email and telephone about the problem plaguing his truck, filed a complaint with the Better Business Bureau.

26. When the Better Business Bureau confronted Chrysler with Mr. Porter's complaint, Chrysler submitted a written response dated February 18, 2013, in which Chrysler acknowledged the existence of the problem and that a repair had not been made, but maintained that its engineers were working on a fix:

> Mr. Porter has contacted Chrysler with the problem with a vibration when driving between 35-45 mph. The problem has been forwarded to engineering and they are currently investigating this problem *and developing a repair to fix it.*

Ex. 1 (emphasis added).

27. To date, Plaintiffs' truck has not been fixed, Chrysler has provided no "repair procedure," and Plaintiffs, like countless other Ram truck owners, are left with trucks having a defective MDS.

## THE CHRYSLER EXPRESS WARRANTY AND CHRYSLER'S BREACH OF THE SAME

28. Plaintiffs' 2012 Ram 1500 truck, like all 2010-2013 Ram trucks equipped with the Chrysler 5.7 L Hemi engine were covered by Chrysler's 5 year/100,000 mile Powertrain Limited Warranty, a copy of which is attached hereto as Exhibit 2, on which Plaintiffs reasonably relied in making their truck purchase.

29. As detailed in that express warranty, the scope of warranty coverage is comprehensive, for the text of the warranty provides that:

> The Basic Limited Warranty covers the cost of *all* parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship
> or factory preparation. *There is no list of covered parts since the only exception are tires and Unwired headphones. You pay nothing for these repairs.* These warranty repairs or adjustments
> — including all parts and labor connected with them — will be *made by your dealer at no charge*, using new or remanufactured parts.

Ex. 2 hereto, at p.5, § 2.1.B (emphasis added).

30.   By its terms, therefore, the Chrysler 5 year/100,000 mile Powertrain Limited Warranty covers any defect to the MDS that would cause trucks to experience the vibration and shifting-out-gear symptoms experienced by the Porters, as was documented and replicated by Chrysler's own dealership.

31.   Under the terms of Chrysler's own express warranty, Chrysler's obligation was clear—Chrysler was to repair the defective MDS or other engine component at no cost to Plaintiffs.

32.   Chrysler has not done so, and Plaintiffs' truck remains operating in the same defective fashion.  Worse yet, Chrysler has admitted that there is a "problem" with Plaintiffs' truck, but rather than having fixed it as was required under Chrysler's express warranty, Chrysler has represented to the Better Business Bureau that its engineers are "developing a repair to fix it." Ex. 1.

33.   Of course, the development of a "repair procedure" has been something that Boniface-Hiers Chrysler Dodge Jeep first demanded for Mr. Porter's truck back in September 17, 2012, when Mr. Porter brought his vehicle for repairs to that dealership and the dealership's mechanics verified the problem.

34.   Chrysler has failed to develop or disclose a repair to fix the problems plaguing its MDS in the 5.7 L Hemi engine powering the subject vehicles, and this

failure amounts to a material breach of Chrysler's 5 year/100,000 mile Powertrain Limited Warranty.

## CLASS ACTION ALLEGATIONS

35. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action on behalf of all owners of model year 2010-2013 Ram trucks within the United States that are equipped with Chrysler's 5.7 L Hemi engine outfitted with Chrysler's MDS who have filed a complaint about the MDS' performance within the 5 year/100,000 mile period of Chrysler's Powertrain Limited Warranty's durational limits. Alternatively, Plaintiffs seek to certify an alternate class meeting this same definition, but limited to such owners within the State of Florida. Specifically excluded from all of the class definitions are all federal, state, and local government officials, as well as all judicial officers assigned to this case and their staff. Likewise, excluded from the class definition are all employees, directors, or officers of Defendant. Plaintiffs reserve the right to amend these class definitions upon the attainment of discovery.

36. Although the exact number of class members is presently unknown, Plaintiffs are informed and believe that at least thousands of model year 2010-2013 Ram trucks equipped with the 5.7 L Hemi engine outfitted with the MDS were produced, and sold in Florida and nationwide. Likewise based on, *inter alia*, the prevalence of public complaints about the MDS, Plaintiffs are informed and believe that thousands of such owners complained about the MDS to Chrysler or its dealers during their vehicles' respective warranty periods. Therefore, members of the class are so numerous that joinder of all members is impracticable.

37. Class certification is also appropriate because there is an identifiable class on whose behalf this class action would be prosecuted. Specifically, Plaintiffs seek

11

to represent classes of all nationwide or Florida owners of a specific vehicle engine (the 5.7 L Hemi) who filed complaints with Chrysler or its dealers about a specific component (the MDS). The vehicle owners are identifiable through their vehicle registration and/or title documents, and records of complaints made to Chrysler or its dealers during the vehicle's warranty period are also, of necessity, are kept by the dealerships and/or Chrysler in order to document the vehicle service history and determine whether the complaint is subject to warranty coverage.

38. Class certification is also appropriate because there are questions of fact and/or law that are common to the class members, and that predominate over any issues that may affect only individual members of the class. Among these predominating common questions of fact and/or law are:

    a. Whether Defendant is responsible for injecting allegedly defective Ram trucks into the United States or Florida stream of commerce;

    b. Whether the Chrysler 5.7 L Hemi engine powering the 2010-2013 Ram trucks contains a material defect to its MDS;

    c. Whether such a defect is covered by Chrysler's 5 year/100,000 mile Powertrain Limited Warranty;

    d. Whether Chrysler has breached its 5 year/100,00 mile Limited Powertrain warranty, or any other written warranty, by failing to remedy the defects present in the MDS of its 5.7 L Hemi engine;

    e. Whether Chrysler's inability or unwillingness to correct the defect to the MDS of its 5.7 L Hemi engine under Chrysler's 5 Year/100,000 mile Powertrain Limited Warranty, or any other applicable warranties, amounts to a violation of the Magnuson-Moss Warranty Act;

    f. Whether class members are entitled to the relief sought, and if so, the proper scope of such relief.

39. Plaintiffs' claims are typical of the claims of the absent class members in that Plaintiffs, like all the absent class members, own a 2010-2013 model year Ram truck equipped with Chrysler's 5.7 L Hemi engine outfitted with Chrysler's MDS, whose design and/or manufacture is defective, causing the vehicle to experience loss of power, extreme vibration, and lack of acceleration when the MDS engages or attempts to engage. Plaintiffs, like all class members, seek redress for the legal injuries sustained as a result of this defect.

40. A class action is manageable. The proposed class represents an identifiable community that can be readily identified, and the relief sought is one that can be overseen by the Court.

41. A class action represents a superior form of litigation over individual lawsuits because, *inter alia*, the high cost associated with litigating this action against a large and sophisticated defendant like Chrysler relative to the comparatively small amount of damages sustained by any single individual user would render litigation practically unfeasible absent class certification.

## COUNT I
### (BREACH OF EXPRESS WARRANTY)

### (ON BEHALF OF A NATIONWIDE CLASS OR, ALTERNATIVELY, A FLORIDA CLASS)

42. Plaintiffs reassert and reallege paragraphs 1 through 41 as if fully set forth herein.

43. Subject to the conditions and limitations set forth in Paragraph 35 *supra*, Plaintiffs brings this count of this Class Action Complaint on behalf of themselves and a class of owners nationwide of model year 2010-2013 Ram trucks equipped with Chrysler's 5.7 L Hemi engine which, in turn, is outfitted with Chrysler MDS. In the alternative, Plaintiffs seek to certify such a class limited to

Florida owners of the subject vehicles.

44. The Chrysler 5.7 L Hemi engine outfitted with Chrysler's MDS, which powers the subject vehicles, including the 2012 Ram Truck 1500 owned by Plaintiffs, contains a common defect that causes the vehicles experience loss of power, extreme vibration, and lack of acceleration when the MDS engages or attempts to engage.

45. Plaintiffs' vehicle, like all the subject vehicles, are covered by Chrysler's written 5 year/100,000 mile Powertrain Limited Warranty, which is attached hereto as Exhibit 2. The warranty provides, in pertinent part, that:

> The Basic Limited Warranty covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation. There is no list of covered parts since the only exception are tires and Unwired headphones. You pay nothing for these repairs. These warranty repairs or adjustments — including all parts and labor connected with them — will be made by your dealer at no charge, using new or remanufactured parts.

Ex. 2 hereto, at p.5, § 2.1.B.

46. By its terms, therefore, Chrysler's 5 Year/100,000 mile Powertrain Limited Warranty covers any repairs necessary to Plaintiffs' MDS, to remedy its defective material, workmanship or factory preparation.

47. Plaintiffs repeatedly presented their vehicle to a Chrysler factory-authorized dealership for repair of the MDS within the term of Chrysler's 5 Year/100,000 mile Powertrain Limited Warranty, and the dealership has acknowledged such a problem exists with Plaintiffs' vehicle.

48. Nevertheless, despite a clear obligation under its own written warranty to repair the defective MDS, Chrysler has not done so, thereby materially breaching its express warranty.

49. Chrysler's breach is made all the more pronounced because Chrysler, itself, has acknowledged in writing that it is aware of the problem Plaintiffs' vehicle, but has not yet devised a fix for it:

> The problem has been forwarded to engineering and they are currently investigating their problem and developing a repair to fix it.

Ex. 1 at 1.

50. As a direct, proximate, and foreseeable result of Chrysler's material breach of its express warranty, Plaintiffs and the members of the class Plaintiffs seek to represent have been injured by being left with a defective vehicle, and by failing to obtain the benefit of their bargain.

51. Plaintiff and the putative class members are entitled to and do seek monetary, declaratory, injunctive, and equitable relief as redress for Chrysler's material breach of its express warranty.

## COUNT II
## (VIOLATION OF FEDERAL MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301 ET. SEQ.).

### (ON BEHALF OF A NATIONWIDE CLASS OR, ALTERNATIVELY, A FLORIDA CLASS)

52. Plaintiffs reassert and reallege paragraphs 1 through 41 as if fully set forth herein.

53. Subject to the conditions and limitations set forth in Paragraph 35 *supra*, Plaintiffs bring this count of this Class Action Complaint on behalf of themselves and a class of owners nationwide of model year 2010-2013 Ram trucks equipped with Chrysler's 5.7 L Hemi engine which, in turn, is outfitted with Chrysler MDS. In the alternative, Plaintiffs seek to certify such a class limited to Florida owners of the subject vehicles.

54. Chrysler is a "warrantor" within the meaning of the federal Magnuson-Moss Warranty Act.

55. Plaintiffs and each of the putative class members are "consumers" within the meaning of the federal Magnuson-Moss Warranty Act.

56. Chrysler has issued a written warranty of with a duration extending to the earlier of 5 years or 100,000 miles covering the subject vehicles, through which Chrysler warrants that it will cover at no cost to consumers "all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation." Ex. 2, at p.5, § 2.1.B.

57. In fact, contrary to the representations of its warranty, Chrysler has failed to repair the defective MDS of its 5.7 L Hemi engine, and appears unable to do so. Instead, it has stated in writing that rather than being able to repair or remedy the defect, its engineers are "currently investigating this problem and developing a repair to fix it." Ex. 1 at 1. No repair or fix has yet been forthcoming.

58. Prior to commencing this suit, Plaintiffs notified Chrysler of the alleged defect and provided Chrysler an opportunity to cure the same, but Chrysler has not done so.

59. Under 15 U.S.C. § 2310(d)(1), Plaintiffs, as a consumers "who [are] damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). Plaintiffs sue pursuant to this section to recover money damages and for legal and equitable relief.

60. Likewise, pursuant to 15 U.S.C. § 2310(d)(2), upon prevailing in this action, Plaintiffs are entitled to receive an award of attorneys' fees and expenses,

and pray for the same.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the class members pray for judgment against Defendant as follows:

A. That the Court determine that this action may be litigated as a class action, and that Plaintiffs and their counsel be appointed class representatives and class counsel, respectively;

B. That Defendant be permanently enjoined from continuing in any manner the violations alleged herein;

C. That judgment be entered against Defendant and in favor of Plaintiffs and the class members on all counts

D. That Defendant be ordered to bear the cost of notifying the absent class members of this class action, and of the class members' rights respecting the same;

E. That Defendant be ordered to pay the actual damages and losses sustained by Plaintiffs and the class members and/or the maximum amount of applicable statutory damages;

F. That the Court order the creation of a common fund from which Plaintiff and his counsel shall be awarded their reasonable costs of suit, including reasonable attorneys' fees and expenses incurred in prosecuting this class action and in conferring a common benefit upon the class members;

G. That Plaintiffs and the class members be awarded all such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs respectfully request a trial by jury on all counts so triable.

Dated: April 4, 2013                                   Respectfully submitted,

/s/ Roy A. Katriel

Roy A. Katriel (Bar No. 265463)
THE KATRIEL LAW FIRM
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Phone: (858) 350-4342
Fax:   (858) 430-3719
E-Mail: rak@katriellaw.com

*Counsel for Plaintiffs*

**MCCABE RABIN, P.A.**
Centurion Tower
1601 Forum Place, Suite 505
West Palm Beach, FL 33401
Phone: (561) 659-7878
Fax: (561) 242-4848

By: _____
Adam T. Rabin
Florida Bar No. 985635
arabin@mccaberabin.com
Robert C. Glass
Florida Bar No. 052133
rglass@mccaberabin.com

*Local Counsel for Plaintiffs*